FILED
 2009 Jun-12 PM 04:23
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DAWN L. STANTON,** } | |
| } | |
| Plaintiff, } | |
| } | |
| vs. } | **CASE NO. CV 09-B-0291-S** |
| } | |
| **MED CENTER MAZDA; STEVE SNODSMITH,** } } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This case is before the court on defendants' Motions to Dismiss, (doc. 4),[1] which the court has construed as a Motion to Compel Arbitration. Based on the submissions of the parties and the arguments of counsel, the court finds the Motion is due to be granted.

**I.    Legal Standard**

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, (the "FAA") "applies to any contract 'affecting' interstate commerce." *Klay v. All Defendants*, 389 F.3d 1191, 1200 n. 9 (11th Cir. 2004) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995) and 9 U.S.C. § 2). Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided in such agreement." *Id.* "The

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

determination of the propriety of a motion to compel arbitration pursuant to Section 4 . . . is a two-step inquiry.  The first step is to determine whether the parties agreed to arbitrate the dispute. . . . The second step in ruling on a motion to compel arbitration involves deciding whether legal constraints external to the parties' agreement foreclosed arbitration."  *Klay*, 389 F.3d at 1200.

## II.   Discussion

The sole issue before the court is whether plaintiff agreed to arbitrate this case.  Plaintiff's name appears printed on an Agreement for Employees that mandates arbitration of all disputes among employees of Med Center Mazda or between an employee and the company.  (Doc. 4, Ex. A, p. 3.)  Plaintiff contends "[i]t is not [her] normal and customary practice to print [her] name on important documents requiring a signature."  (Doc. 10, Ex. A, p. 4.)  She offers other "important" documents that she signed in cursive.  (Doc. 6, Exs. A - C.)  Although she does not actually deny printing her name on the agreement, plaintiff argues she did not intend to contractually bind herself to the arbitration agreement with this mark—that is, her printed name is not her "signature" as the term is legally defined.  (Doc. 6.)

A signed contract with an arbitration clause is normally sufficient for a district court to send any controversies to arbitration.  *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992).  However, that calculus changes when a party disputes the existence of the agreement to arbitrate at all by, for example, arguing that the

agreement was not signed. *Id*. If there is no agreement to arbitrate, then there is no presumption that the district court is obligated to compel arbitration. *Id*. To make a genuine issue out of the existence of an agreement to arbitrate, the party seeking to avoid arbitration must first make an unequivocal denial that the agreement has been made and then provide some evidence to substantiate the denial. *See id*. (citing *T & R Enterprises, Inc. v. Continental Grain Co.* 613 F.2d 1272, 1278 (11th Cir. 1980)). Plaintiff's argument that her printed name is not her legal signature is not an unequivocal denial of assent to the contract, and for that reason alone, plaintiff has not put in issue whether she agreed to arbitrate under the Agreement for Employees.

Assuming that plaintiff had met the two requirements for placing arbitrability in issue – first, an unequivocal denial, and second, evidence supporting the denial, which would be the other documents plaintiff signed and submitted as evidence – the court would have to evaluate the validity of the agreement between the parties. *See Chastain*, 957 F.2d at 855 (after determining that existence of arbitration agreement was in issue, Eleventh Circuit remanded the case for a determination of the agreements' validity). As discussed below, such an evaluation leads to the conclusion that the agreement was valid and that the plaintiff agreed to arbitrate.

"[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists. Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of

contracts." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (citation omitted). In Alabama, arbitration agreements are enforced in the same manner as any other contract, and courts should decide whether parties agreed to arbitrate based on state-law principles that govern the formation of contracts. *Lanier Worldwide, Inc. v. Clouse*, 875 So. 2d 292, 295-96 (Ala. 2003). "The requisite elements of a contract include: an offer and acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Baptist Health Sys., Inc. v. Mack*, 860 So. 2d 1265, 1273 (Ala. 2003) (quotations and alteration omitted).

The purpose "of a signature on a contract is to show mutuality and assent, and . . . mutuality and assent can be manifested in ways other than a signature. Unless required by a statute to be in writing, a contract does not have to be signed to be enforceable, so long as it is accepted and acted upon." *Lanier*, 875 So. 2d at 296. The FAA only requires a written arbitration provision in a contract; it does not require a signature to evidence assent. *Id.*; *see also Caley*, 428 F.3d at 1370 ("[No signature is needed to satisfy the FAA's written agreement. First, the plain language of § 2 requires that the arbitration provision be 'written.' It does not, however, require that the agreement to arbitrate be signed by either party; nor does any other provision of the FAA."). Thus, courts have found continued employment to be acceptance of a written arbitration agreement that specified continued employment as a form of acceptance. *See Caley*, 428 F.3d at 1369-70; *see also Baptist Health Sys., Inc.*, 860 So. 2d at 1273-74.

In this particular case, the "Agreement for Employees" does not specify a manner of acceptance. (Doc. 4, Ex. A.) It does, however, have a signature line at the end that bears plaintiff's printed name. (Doc. 4, Ex. A, p. 6.) Although plaintiff argues that she has no knowledge of the twelve year old document and that it is not her customary practice to sign her name in print, (doc. 6; doc. 10, ex. A), she has not denied actually printing her name. Plaintiff's printed name, although not her customary signature, is her legal signature provided that she wrote it. *See Progressive Specialty Ins. Co. v. Gore*, 1 So. 3d 996, 999-1001 (Ala. 2008) (See, J., concurring specially) (quoting *Carrozza v. Carrozza*, 944 A.2d 161, 165 (R.I. 2008)) ("The validity of a signature . . . does not turn on the form of the mark; indeed any mark will suffice, as long as that mark is adopted as one's own."); Black's Law Dictionary (8th ed. 2004) ("Signature. 1. A person's name or mark written by that person or at the person's direction."). And that signature constitutes assent to the arbitration agreement.

### III.  Conclusion

Accordingly, the court finds that plaintiff consented to arbitration and that defendants' Motion to Dismiss is due to be granted. An Order granting defendants' Motion will be entered contemporaneously with this Memorandum Opinion.

**DONE** this the 12th day of June, 2009.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE